656 So.2d 563 (1995)
George ROJAS, Appellant,
v.
Mercedes ROJAS, Appellee.
No. 94-2277.
District Court of Appeal of Florida, Third District.
June 14, 1995.
Rehearing Denied July 19, 1995.
*564 Edilberto O. Marban, Coral Gables, for appellant.
Simon, Schindler & Sandberg and Roger J. Schindler and Terri Grumer Sonn, Miami, for appellee.
Before HUBBART, LEVY and GODERICH, JJ.
PER CURIAM.
The husband, George Rojas, appeals from a final judgment of dissolution of marriage. We reverse, in part, and affirm, in part.
The parties were married on June 21, 1980. They had two children, George, Jr. and Alex. In March 1993, the parties separated, and in April 1993, the wife filed for dissolution of marriage. At that time, the parties had been married for twelve years. The husband was thirty-four years old, and the wife was thirty-five.
In late 1993, at six years of age, their son, Alex, was diagnosed with leukemia. The parties agreed that the wife would take six months off from her job as a receptionist so that she could care for Alex while he was undergoing extensive medical treatment. After the six months, the parties expected that the leukemia would go into remission and that the wife would be able to return to work.
In August 1994, the trial court held the final hearing of dissolution of marriage. At this time, the husband was employed by Pepsi Cola as a Sales Manager, while the wife was unemployed. Based on the final hearing, the court made several findings of fact and entered an order providing, in relevant part, for the following: The wife will be the primary residential parent of the two minor children, and the parties shall have shared parental responsibility and visitation. The husband's long-term savings program will be equitably distributed between the husband and the wife. The wife will receive child support from the husband for both children. The husband will maintain the major medical policies for the children and will pay all uncovered medical expenses such as deductibles and dental, ophthalmologic, and orthodontic expenditures. The husband will maintain a life insurance policy with the wife as the irrevocable beneficiary as guardian of the minor children. Each spouse will keep his or her respective cars, jewelry, and personal effects. The wife will receive exclusive possession of the marital home until the children reach the age of majority. The husband will be obligated to pay one-half of the mortgage payment for the marital home plus one-half of all major renovations and repairs, and upon the youngest child reaching majority, the house will be sold and the proceeds will be divided equally between the parties. The husband will indemnify the wife for all outstanding debts from the marriage. Lastly, the husband will pay the wife permanent periodic alimony. The husband appeals from this final judgment of dissolution of marriage.
The husband raises several issues on appeal; however, only two merit discussion. First, he contends that the trial court abused *565 its discretion by failing to impute income to the wife where the evidence clearly showed her ability and willingness to be employed. We agree.
When calculating child support pursuant to the guidelines, section 61.30(2)(b), Florida Statutes (1993), requires the following:
Income shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for the parent to stay home with the child.
In the instant case, the trial court found that "it is necessary for the Wife to stay home with the children and will therefore not impute income to the Wife." At the final hearing, the wife testified that she wanted and intended to go back to work once the children went back to school at the end of the summer. She further explained that she could only go back to work on a part-time basis, four days a week, because she had to take Alex to chemotherapy once a week.
After a review of the wife's own testimony, we find that the trial court abused its discretion by refusing to impute income to the wife based on its finding that "it is necessary for the Wife to stay home... ." The wife's testimony clearly establishes that it is not necessary for her to stay home on a full-time basis. She explained that even in light of Alex's medical needs, she intended and wanted to work part-time.
Therefore, we reverse and remand the award of child support with directions for the lower court to impute income to the wife based on her recent work history as a receptionist, her occupational qualifications, and the prevailing earnings level in the community for a part-time employee, and to recalculate the award of child support pursuant to the guidelines.
Second, the husband contends that the trial court abused its discretion by awarding the wife permanent periodic alimony. We agree.
"Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties." Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980). "The primary elements which a court must consider when determining whether to award permanent periodic alimony are the needs of one spouse and the ability of the other spouse to pay. The factors for establishing the needs of a spouse include the parties' earning abilities, age, health, education, the duration of the marriage, the standard of living enjoyed during the marriage, and the value of the parties' estates." Hann v. Hann, 629 So.2d 918, 920 (Fla. 2d DCA 1993) (citing Canakaris, 382 So.2d at 1201-02). In contrast, "[t]he principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills." Canakaris, 382 So.2d at 1202.
In the instant case, at the time of the final hearing, the wife was thirty-five years old, she was in good health, and she had some job skills that might eventually enable her to become self-supporting. The fact that the husband's income was more than that of the wife's during her previous employment did not solely justify the award of permanent periodic alimony to the wife. Hann, 629 So.2d at 920. Therefore, we conclude that the trial court abused its discretion by awarding the wife permanent periodic alimony.
We find, as the husband concedes, that an award of long-term rehabilitative alimony would be more appropriate in this situation. At a minimum, rehabilitative alimony should be awarded to the wife until Alex completes his chemotherapy treatments, and *566 the wife can return to work full-time. Additionally, on remand, should the wife desire to do so, she should be given the opportunity to present evidence regarding job re-training.
Therefore, we reverse the award of permanent periodic alimony to the wife and remand with instructions for the trial court to award the wife long-term rehabilitative alimony.
Because the remaining points lack merit, we affirm all other aspects of the final judgment of dissolution of marriage.
Accordingly, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.